IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KEVIN KENNEY,

      Plaintiff,

v.                                No. _____

BOARD OF COUNTY COMMISSIONERS FOR UNION
COUNTY, CLAY KIESLING, Chair of the Board of County
Commissioners for Union County or Commissioner for the
Board of County Commissioners for Union County, in his
individual capacity, LLOYD "RED" MILLER, Commissioner
for the Board of County Commissioners for Union County, in
his individual capacity, W. CARR VINCENT, Commissioner
for the Board of County Commissioners for Union County, in
his individual capacity, UNION COUNTY SHERIFF'S OFFICE,
and CURTIS SKAGGS, Union County Sheriff,

      DEFENDANTS.

## COMPLAINT FOR STATE AND FEDERAL CONSTITUTIONAL VIOLATIONS AND FOR INJUNCTIVE RELIEF

COME NOW Plaintiff Kevin Kenney, by and through his undersigned counsel, Domenici Law Firm, P.C. (Pete V. Domenici, Jr., Esq.), and for his Complaint for State and Federal Constitutional Violations and for Injunctive Relief, states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Kevin Kenney is a resident and citizen of Dallas County, Texas and owns land in Union County, New Mexico, commonly known as the Cedar Creek Ranch.

2. Cedar Creek Ranch is a rural property on which Plaintiff conducts cattle ranching operations.

1

3.      Defendant Board of County Commissioners for Union County ("Union County Board") is a public body within the meaning of the New Mexico Civil Rights Act, NMSA 1978, § 41-4A-2.

4.      The Union County Board is the governing body of Union County and a local governmental entity that is a person within the meaning of 42 U.S.C. § 1983.

5.      Defendant Clay Kiesling was the Chair of the Union County Board or a Commissioner for the Union County Board at all relevant times.

6.      Defendant Lloyd "Red" Miller was a Commissioner for the Union County Board at all relevant times.

7.      Defendant W. Carr Vincent was a Commissioner for the Union County Board at all relevant times.

8.      At all relevant times, the Union County Board acted under color of state law, by and through Defendants Kiesling, Miller, and Vincent, and exercised final policymaking authority for Union County with respect to road designation, maintenance, alteration, and eminent domain.

9.      The Union County Board and Defendants Kiesling, Miller, and Vincent are sometimes referenced herein as the Union County Defendants. Defendants Kiesling, Miller, and/or Vincent are sometimes referenced herein as the Commissioner Defendants.

10.     Defendant Union County Sheriff's Office is a public body within the meaning of the New Mexico Civil Rights Act, NMSA 1978, § 41-4A-2.

11.     The Union County Sheriff's Office is a local governmental entity that is a person within the meaning of 42 U.S.C. § 1983.

12.     Defendant Skaggs was the Sheriff of the Union County Sheriff's Office at all relevant times.

2

13.     At all relevant times, Defendant Union County Sheriff's Office acted under color of state law, by and through Defendant Skaggs, who exercised final policymaking authority for the Sheriff's Office.

14.     The constitutional violations alleged herein against the Union County Board were caused by and resulted from the Board's official policies, customs, or practices.

15.     The constitutional violations alleged herein against the Union County Sheriff's Office were caused by and resulted from the Sheriff's Office's official policies, customs, or practices.

16.     The acts or omissions alleged herein occurred in Union County.

17.     Jurisdiction is proper in this Court because this Complaint presents claims raising a federal question pursuant to 28 U.S.C. § 1331, with the state law claims falling within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants are residents in the federal District of New Mexico, because the events and conduct giving rise to the claims asserted in this Complaint occurred in the federal District of New Mexico, and because the rights at issue are in the federal District of New Mexico.

19.     Diversity jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1332(a) and because the amount in controversy exceeds $75,000.

## DESCRIPTION OF CEDAR CREEK RANCH

20.     Plaintiff hereby realleges and incorporates by reference each allegation of the preceding paragraphs as though fully set forth herein.

21.     A map of Cedar Creek Ranch is attached as Exhibit A. The white dotted lines on Exhibit A depict fences. Exhibit A shows that Cedar Creek Ranch has multiple fenced pastures and

traps, including, but not limited to, the Laguna Pasture, the Headquarters Pasture, the Horse Pasture, the Vacia Pasture, the South Pasture, the East Pasture, the Vat Pasture, the Cottonwood Pasture, the Lone Rock Pasture, the Remuda Pasture, the Starnes Pasture, the North Laguna Pasture, and the Upper Shed Trap. Exhibit A also depicts fenced fields north of the Cottonwood Pasture.

22.    Exhibit B is a map which blows up the area north of the Cottonwood Pasture and shows that north of Cottonwood Pasture, in the vicinity of the Headquarters (depicted by the letters HQ on Exhibit B), are multiple, fenced horse and cattle traps.

23.    A road is depicted on Exhibit B by a pink line that runs east-west between the fence line of the Cottonwood Pasture and West Trap and turns north-south through the Lane.

24.    The Lane is the area between the fences along the West Trap and Walk-N-Bawl Pasture. The road is depicted by the pink line in Exhibit A and Exhibit B and is referenced herein as the "pink portion of Cedar Creek Road."

25.    Exhibit B shows that on the south side of the Lane is a cattleguard with a horse bar, depicted by a black line circled in green. Other cattleguards with horse bars are depicted by black lines circled in green. A set of double gates separating the Lane from the Walk-N-Bawl Pasture is depicted in red.

26.    Exhibit B shows that the pink portion of Cedar Creek Road crosses through the double gates separating the Lane from the Walk-N-Bawl Pasture. The line remains pink and upon crossing the cattleguard at the Remuda Pasture, turns brown and continues in a north-south direction before curving again to the east-west. The brown line, hereinafter referenced as the "minimally improved section of Cedar Creek Road," was a minimally maintained, often overgrown and impassable, seldom used, tract, as depicted in Exhibit C.

27.    The minimally improved section of Cedar Creek Road begins as the road exits the Walk-N-Bawl Pasture and enters the Remuda Pasture, where there is another cattleguard with a horse bar, depicted on Exhibit B by a black line in a green circle.

28.    The minimally improved section of Cedar Creek road then passes through the Remuda Pasture until it reaches the west side of the Starnes Pasture, where there is a cattleguard with a horse bar, as depicted in Exhibit A by a black line in a green circle. From there, the minimally improved section of Cedar Creek road continues in an east-west direction until it reaches the end of Cedar Creek Ranch, where there is another cattleguard with a horse bar, as depicted in Exhibit A by a black line in a green circle.

29.    Exhibit A is a map showing more of the length of Cedar Creek Road on Cedar Creek Ranch, including the minimally improved section of Cedar Creek Road, with green circles depicting where cattleguards with horse bars are and including the pink portion of Cedar Creek Road with cattleguards, gates, and horse bars.  The western section of Cedar Creek Road on Cedar Creek Ranch is on State Land Office property and is depicted in yellow on Exhibit A. The purple circle on the yellow section of Cedar Creek Road is a cattle guard without a horse bar.

30.    Prior to March 5, 2024, as reflected by Exhibit C, the minimally improved section of Cedar Creek Road was not an improved road, but an informal, two-track path created by very occasional vehicle travel across native grassland. Although a partial roadbed existed, there had only been, at best, minimal maintenance by Union County.

There was only minimal grading, no base course, no surface material hauled in or added, limited drainage ditches, no shoulders, no culverts, no signage, and no other roadway improvements. The ground that was the minimally improved section of Cedar Creek Road

consisted of native soil and vegetation with visible tire ruts, not engineered or maintained roadway infrastructure.

31.    Historically, and prior to March 5, 2024, Defendants minimally maintained this portion of Cedar Creek Road in a state of disrepair.

32.    After March 5, 2024, the Union County Defendants completely changed the nature of the minimally improved section of Cedar Creek Road, as depicted in Exhibit D, which shows the Union County Defendants' improvements.

33.    For example, after March 5, 2024, the Union County Defendants authorized projects on the minimally improved section of Cedar Creek Road to improve, maintain, and/or alter it, and to enhance access, resulting in the minimally improved section of Cedar Creek Road being improved, crowned, widened, and expanded. The drainage ditches were deepened, widened, and expanded, with many extending onto the private pasture of Cedar Creek Ranch over 250 feet. Union County Defendants extended at least one drainage ditch over 600 feet, another over 800 feet, and extended one such that it demolished a private ranch road on Cedar Creek Ranch.

34.    The fences, gates, and cattleguards with horse bars separating the pastures and traps depicted in the attached Exhibits, especially those surrounding the Headquarters, include the existing infrastructure and historic configuration of Cedar Creek Ranch and are essential for containing and separating livestock, for preventing injury to horses, and for successful cattle operations on the Ranch.

## FACTUAL ALLEGATIONS

35.    Plaintiff hereby realleges and incorporates by reference each allegation of the preceding paragraphs as though fully set forth herein.

36.    Plaintiff first visited Cedar Creek Ranch in the fall of 2021, twice as a visitor and twice as a prospective buyer. During those visits, the gates on Cedar Creek Ranch were in use for livestock operations, including to separate cattle.

37.    For example, during Plaintiff's four visits in the fall of 2021, he saw weaned calves that were separated from cows by closed gates.

38.    Cattleguards alone are insufficient to keep cows and weaned calves separated. Calves are highly motivated to reach their mothers, vocalization and herd behavior increase agitation, and under such stress, cattle attempt crossings over cattleguards they would normally avoid.

39.    Therefore, livestock management practices do not rely on cattleguards alone to keep cows and calves separated.

40.    In addition, a horse bar (aka a jump rail or horse rail), which is a metal rail or bar installed off the ground above the cattle guard that spans the width of the cattle guard, is necessary to prevent horses from trying to jump over the cattle guard, which frequently results in injury or death to horses. The horse bar creates a visual and physical obstacle that reduces the likelihood of a jump attempt.

41.    Upon purchasing the Cedar Creek Ranch in December 2021, Plaintiff acquired approximately 600 cows, consisting of both a fall and spring calving herd. Plaintiff also stocked approximately 45 horses.

42.    As Plaintiff branded, weaned, and conducted cattle operations, he continually used the gates on the Ranch to separate cattle and used horse bars to prevent the horses from trying to jump over the cattleguards.

43.    It is impossible to conduct livestock operations, utilize existing infrastructure, work cattle as historically intended, or to maintain the safety and wellbeing of livestock on Cedar Creek Ranch without closing the gates or using horse bars.

44.    In 2022, Plaintiff's first operating year, he experienced frequent issues with hunters trespassing on his private land, vandalism at the Headquarters, hunting on his private property, cut fences, illegal dumping of trash, and gates left open at entry points of Cedar Creek Ranch and between pastures.

45.    Other property and ranch owners in Union County experienced the same types of issues, one of whom presented his concerns to the Commissioner Defendants and received several county road abandonment approvals.

46.    The issues including trespass, vandalism, destruction of fencing, illegal dumping, and interference with livestock containment impacted not just Plaintiff, but neighboring ranches as well, and constituted matters of public concern, as they implicated public safety, environmental protection, enforcement of trespass laws, and the security of rural property owners within the community.

47.    Plaintiff raised these matters of public concern, first with Defendant Kiesling outside of a Union County Board meeting and then with Defendant Miller. Plaintiff explained to Defendant Miller the issues caused by trespass and vandalism taking place throughout Cedar Creek Ranch. Plaintiff then raised these issues with all the Union County Defendants at public Union County Board meetings.

48.    After Plaintiff first raised these matters of public concern to Defendant Kiesling, the Union County Board met, without notice to Plaintiff, to discuss requiring Plaintiff specifically to keep the gates on Cedar Creek Ranch open and to open all horse bars.

49.     After Plaintiff raised these matters of public concern to Union County Defendants at a November 2023 Union County Board meeting, Defendant Vincent stated that it was inevitable that livestock would die because of a proposed Resolution 2024-21. He stated he did not care what happened to Plaintiff's livestock, Plaintiff's infrastructure, or Plaintiff's livestock operations. At the meeting, Defendant Vincent also threatened Plaintiff that Union County had a right of way and might broaden the road through Cedar Creek Ranch, which would entail tearing out some of the infrastructure, trees, and fences to accommodate an improved road.

50.     After Plaintiff raised these matters of public concern to the Union County Defendants, Union County Defendants passed Resolution 2024-21 at the Union County Board meeting on March 5, 2024, which Resolution became official Union County policy.

51.     Defendants Kiesling and Miller voted to approve Resolution 2024-21.

52.     Resolution 2024-21 declares that "Union County Maintained Roads" are:

"All roads which have been established as a Union County Maintained Road pursuant to the laws of New Mexico by the following, and with acceptance by the Union County BOCC [Board of County Commissioners]:

1. Petition and declaration by Union County BOCC as recorded in minutes of such proceedings.
2. Dedication to use and benefit of the public by filed plat if approved and adopted by the Union County BOCC
3. Deeded to Union County from the landowner by Warranty Deed, Quit Claim Deed, or other legal deed.
4. Easement.
5. Prescriptive right.
6. Donation by owner.
7. Purchased by Union County.
8. Power of eminent domain.
9. Other legal acquisition by Union County."

53.     After the passage of Resolution 2024-21, Plaintiff explicitly asked if it required gates to be opened and livestock turned out and was told yes by the Commissioner Defendants. Plaintiff asked the Commissioner Defendants when the Resolution would go into effect and was

9

told it was effective immediately and every gate and horse bar that crossed Cedar Creek Road on the Cedar Creek Ranch must remain open or be subject to penalties for violating Resolution 2024-21.

54. The Union County Defendants' threats of penalties against Plaintiff for violating Resolution 2024-21, including increasing penalties against him, would chill or deter a person of ordinary firmness from speaking out on the matters of public concern that Plaintiff addressed with the Union County Defendants.

55. In addition, the Union County Defendants and Defendant Union County Sheriff's Office, through Defendant Skaggs, harassed Plaintiff and targeted him for enforcement of Resolution 2024-21.

56. The day Resolution 2024-21 was passed, New Mexico Game and Fish employees came to Cedar Creek Ranch to make sure Plaintiff's gates were open.

57. Thereafter, Defendant Skaggs or a Union County Sheriff's Office Deputy made trips to Cedar Creek Ranch to ensure the gates were open.

58. Throughout Union County, multiple property owners and ranchers still had gates closed and wired shut and had horse bars in place, even on County roads; however, neither the Union County Defendants nor the Union County Sheriff's Department or Defendant Skaggs enforced Resolution 2024-21 against those property owners and required them to keep their gates open or to open horse bars.

59. For example, Plaintiff's neighbors to the east maintained horse bars and maintained closed gates along Union County roads. Defendants did not enforce Resolution 2024-21 against Plaintiff's neighbors and require them to keep gates and horse bars open. Rather, Defendants

targeted Plaintiff specifically for enforcement of Resolution 2024-21 and threatened Plaintiff with penalties.

60.     Defendants' targeted threats and harassment of Plaintiff would chill or deter a person of ordinary firmness from speaking out on matters of public concern.

61.     The enforcement of Resolution 2024-21 against Plaintiff is a pretext to retaliate against Plaintiff for speaking out on matters of public concern..

62.     While Resolution 2024-21 allows for the establishment of a Union County Maintained Road upon a "[p]etition and declaration by Union County BOCC," upon information and belief, Defendant Union County Board never filed any such petition.

63.     While Resolution 2024-21 allows for the establishment of a Union County Maintained Road if Plaintiff dedicated the minimally improved section of Cedar Creek Road or the pink portion of Cedar Creek Road for the use and benefit of Union County by filed plat, Plaintiff never did so.

64.     While Resolution 2024-21 allows for the establishment of a Union County Maintained Road if Union County Defendants possess any type of deed giving them a property interest in the minimally improved section of Cedar Creek Road or the pink portion of Cedar Creek Road, upon information and belief, no such deed exists.

65.     While Resolution 2024-21 allows for the establishment of a Union County Maintained Road if Union County Defendants possess a recorded or documented easement for the minimally improved section of Cedar Creek Road or the pink portion of Cedar Creek Road, upon information and belief, no such recorded instrument or documentation exists.

66.     Upon information and belief, Union County does not have an easement or right-of-way on State Land Office portions of Cedar Creek Road or on Cedar Creek Ranch.

67.     While Resolution 2024-21 allows for the establishment of a Union County Maintained Road upon Union County Defendants establishing the existence of a prescriptive easement or prescriptive right over the minimally improved section of Cedar Creek Road or on the pink portion of Cedar Creek Road, upon information and belief, Defendants have never established the existence of a prescriptive easement or right by administrative or judicial determination, or otherwise.

68.     While Resolution 2024-21 allows for the establishment of a Union County Maintained Road upon the donation of the minimally improved section of Cedar Creek Road or the pink portion of Cedar Creek Road, upon information and belief, no such donation has ever been made.

69.     While Resolution 2024-21 allows for the establishment of a Union County Maintained Road upon the purchase of the minimally improved section of Cedar Creek or the pink portion of Cedar Creek Road, upon information and belief, no such purchase has ever occurred.

70.     While Resolution 2024-21 allows for the establishment of a Union County Maintained Road upon the Union County Defendants' exercise of the power of eminent domain over the minimally improved section of Cedar Creek Road or the pink portion of Cedar Creek Road, upon information and belief, Union County Defendants have never exercised that power of eminent domain.

71.     While Resolution 2024-21 allows for the establishment of a Union County Maintained Road based upon legal acquisition of the rights to it, upon information and belief, Union County Defendants have never legally acquired such rights to the minimally improved section of Cedar Creek Road or the pink portion of Cedar Creek Road.

72.    Resolution 2024-21 does not authorize Union County Defendants to unilaterally declare the minimally improved section of Cedar Creek Road or the pink portion of Cedar Creek Road as a Union County Maintained Road.

73.    Resolution 2024-21 does not authorize Union County Defendants to improve the minimally improved section of Cedar Creek Road or the pink portion of Cedar Creek Road and using the Resolution as a pretext to improve those sections of road is retaliatory for Plaintiff's exercise of his First Amendment rights.

74.    To the extent Union County Defendants claim Resolution 2024-21 authorizes them to declare any portion of Cedar Creek Road as a Union County Maintained Road without a judicial determination that they have a prescriptive easement over the road and a determination as to the nature, extent, or scope of that prescriptive easement or without exercising their power of eminent domain, the Resolution is unconstitutional.

75.    To the extent Union County Defendants claim Resolution 2024-21 authorizes them to declare that no historic, pre-existing gates or horse bars are allowed to remain closed on the portions of Cedar Creek Road that are on Plaintiff's private land, as shown in pink and brown on Exhibit A, the ordinance constitutes an expansion of any prescriptive rights, is unconstitutional, and constitutes a taking under state and federal law.

76.    Resolution 2024-21 establishes procedures for Union County Defendants to establish a right-of-way or to alter a private road, which procedures are set forth in NMSA 1978, §§ 67-5-5 through 67-5-21.

77.    Upon information and belief, Union County Defendants never followed the procedures set forth in NMSA 1978, §§ 67-5-5 through 67-5-21 prior to improving the minimally improved section of Cedar Creek Road, including without limitation, filing a petition, posting a

bond, providing the required notices, assessing damages to Plaintiff, conducting a survey, filing a written report, awarding Plaintiff damages to the extent the harm to them exceeds the public benefit, considering objections, recording the report and survey, or declaring and posting that Plaintiff's road is a public highway.

78.    Union County Defendants' use of Resolution 2024-21 as authorization for establishing a right-of-way or altering the minimally improved section of Cedar Creek Road while violating the Resolution's express provisions reflects the pretextual and retaliatory nature of their actions.

79.    Defendants Union County Sheriff's Office and Defendant Skaggs knew about Plaintiff's speech on matters of public concern through the Union County Defendants, public meetings, and coordinated pretextual enforcement efforts with Union County Defendants regarding Resolution 2024-21 against Plaintiff.

80.    Defendants Union County Sheriff's Office's and Defendant Skaggs' targeted harassment and enforcement of Resolution 2024-21 against Plaintiff, which enforcement actions similarly situated landowners were not subject to, constituted an adverse action that would deter a person of ordinary firmness from engaging in protected speech.

81.    Defendants' conduct has eliminated the ability of Plaintiff to conduct historical and long-standing ranching practices integral to the use of Cedar Creek Ranch, has materially increased the burden on Cedar Creek Ranch by exposing it to livestock loss and operational disruption, has significantly diminished Cedar Creek Ranch's property value, and has caused Plaintiff significant expense to reconfigure his livestock operation to accommodate Resolution 2024-21.

### COUNT I—PROCEDURAL DUE PROCESS VIOLATION

82. Plaintiff hereby realleges and incorporates by reference each allegation of the preceding paragraphs as though fully set forth herein.

83. This claim is brought pursuant to 42 U.S.C. § 1983 against the Union County Defendants.

84. Plaintiff's ownership of Cedar Creek Ranch includes the right to exclude the public, to control access by gate, to maintain livestock operations by using horse bars, and to use the property for cattle operations, which rights constitute legally cognizable and protected property interests under New Mexico state law and the Fifth Amendment of the United States Constitution, applicable to the Union County Defendants through the Fourteenth Amendment.

85. Resolution 2024-21 is the official policy of the Union County Board.

86. To the extent Resolution 2024-21 authorizes the Union County Defendants to unilaterally declare the minimally improved section of Cedar Creek Road and the pink portion of Cedar Creek Road as a Union County Maintained Road, without notice and a hearing and without other procedural protections, or to the extent the Resolution allows the Union County Defendants to declare the minimally improved section of Cedar Creek Road and the pink portion of Cedar Creek Road a Union County Maintained Road without a judicial determination that they have a prescriptive easement over the road and without a judicial determination of the nature, extent, or scope of that prescriptive easement, or to the extent the Resolution allows the Union County Defendants to declare the minimally improved section of Cedar Creek Road and the pink portion of Cedar Creek Road as a Union County Maintained Road without exercising their power of eminent domain, the Resolution is unlawful and unconstitutional on its face.

87. Resolution 2024-21 authorizes a predictable deprivation of private property interests by permitting the Union County Defendants to unilaterally treat private roads as public

and to expand their use and character without first providing affected property owners with notice, hearing, or an individualized determination of rights.

88.    With respect to the minimally improved section of Cedar Creek Road and the pink portion of Cedar Creek Road, Union County Defendants either lacked any prescriptive easement or unlawfully enlarged any purported prescriptive easement beyond its historical use and scope, including improving the minimally improved section of Cedar Creek Road and expanding public access and vehicular use beyond what existed at the time any alleged prescriptive rights would have accrued and altering the nature and intensity of any historical use.

89.    To the extent any prescriptive rights exist, they are subject to long-standing practices of controlling pastures with cattleguards, horse bars, and closed gates.

90.    Union County Defendants required that all gates and horse bars on Cedar Creek Road marked on Exhibit A that had historically remained closed to protect livestock operations remain open and that horse bars not be used.

91.    Union County Defendants never provided Plaintiff notice or a meaningful opportunity to be heard before adopting Resolution 2024-21 or expanding the use of Cedar Creek Road, and/or precluding or interfering with Plaintiff's right to use gates and horse bars as required for livestock operations.

92.    Union County Defendants never followed state statutory procedures to declare a right of way or to alter Cedar Creek Road, as required by Resolution 2024-21.

93.    Any post-deprivation remedies are inadequate because Union County Defendants authorized the deprivation of Plaintiff's property interests in advance by adopting Resolution 2024-21 and depriving Plaintiff of the opportunity to prevent or limit the taking of his property interests.

94.    Plaintiff's private interests in limiting public access and maintaining livestock operations are substantial and the risk of erroneous deprivation is high because Resolution 2024-21 operates without individualized determination.

95.    There is no justification for the absence of fundamental procedural protections when the Union County Defendants acted pursuant to Resolution 2024-21 to deprive Plaintiff of his property rights.

96.    The deprivation of Plaintiff's property interests was directly caused by official policy of the Union County Board, including the adoption, implementation, and enforcement of Resolution 2024-21.

97.    By depriving Plaintiff of protected property interests pursuant to an official policy without notice, a meaningful opportunity to be heard, or a neutral decisionmaker, Union County Defendants violated Plaintiff's rights to procedural due process under the Fourteenth Amendment.

98.    Defendant Union County Board, through its final policymakers and decisionmakers, Defendants Kiesling, Miller, and Vincent, had actual knowledge of the violation of Plaintiff's procedural due process rights and knowingly participated in, ratified, directed, or implemented those constitutional violations.

99.    Defendants Kiesling, Miller, and Vincent knew that application of Resolution 2024-21 to the pink portion of Cedar Creek Road and the minimally maintained section of Cedar Creek Road would deprive Plaintiff of and interfere with his property rights and would materially alter the use and character of Plaintiff's private property.

100.    Defendants Kiesling, Miller, and Vincent knew of and deliberately disregarded the absence of judicial determination establishing the existence or scope of a prescriptive easement

over the minimally improved section of Cedar Creek Road and over the pink portion of Cedar Creek Road in favor of the Union County Board.

101. Defendants Kiesling, Miller, and Vincent knew of and deliberately disregarded the absence of any condemnation proceedings that would have given Union County Defendants a right over the minimally improved section of Cedar Creek Road and the pink portion of Cedar Creek Road.

102. Defendants Kiesling, Miller, and Vincent knew the Union County Board did not have a legally recognizable claim for significant upgrades, improvements, or expansion of off-road drainages over the minimally improved section of Cedar Creek Road and the pink portion of Cedar Creek Road and did not have authority to prohibit use of gates and horse bars.

103. Despite this knowledge, Defendants Kiesling, Miller, and Vincent authorized, ratified, and/or enforced the Union County Board actions treating the minimally improved section of Cedar Creek Road as a public road without providing Plaintiff with notice, a pre-deprivation hearing, or an opportunity to contest the existence or scope of any claimed interest by Union County Defendants over the minimally improved section of Cedar Creek Road.

104. Upon information and belief, Defendants Kiesling, Miller, and Vincent directed, approved, ratified, coordinated with, and/or intentionally disregarded the actions of Union County officials, personnel, or contractors and Defendants Union County Sheriff's Office and Skaggs, or road crews who entered onto Plaintiff's property, performed maintenance, improvements, and alteration on the minimally improved section of Cedar Creek Road, and/or who required that gates and horse bars at the pastures on Plaintiff's property remain open.

105. The conduct of Defendants Kiesling, Miller, and Vincent was not legislative in nature because it involved application and enforcement of Resolution 2024-21 to a specific,

identifiable property rather than the formulation or adoption of general Union County Board policy.

106. At the time of Defendants Kiesling's, Miller's, and Vincent's conduct, it was clearly established that a municipality may not deprive a property owner of a protected property interest without notice and a meaningful opportunity to be heard before the deprivation occurs.

107. At the time of Defendants Kiesling's, Miller's, and Vincent's conduct, it was clearly established that a municipality cannot expand the scope of a prescriptive easement beyond its historical use.

108. It was objectively unreasonable for Defendants Kiesling, Miller, and Vincent to believe they could authorize or ratify the physical alteration of the minimally improved section of Cedar Creek Road or materially expand its public use, or prohibit the use of gates and horse bars and encourage expanded use of the minimally maintained portion of Cedar Creek Road without first affording Plaintiff procedural protections.

109. By knowingly authorizing, ratifying, or enforcing a course of conduct that deprived Plaintiff of protected property interests without notice or a meaningful opportunity to be heard, Defendants Kiesling, Miller, and Vincent violated Plaintiff's procedural due process rights and are liable in their individual capacities under 42 U.S.C. § 1983.

110. Plaintiff is entitled to compensatory and consequential damages, as well as his attorney's fees and costs pursuant to 42 U.S.C. § 1988, against all Defendants.

111. Plaintiff is entitled to punitive damages against Defendants Kiesling, Miller, and Vincent in their individual capacities because they intentionally, willfully, knowingly, and recklessly disregarded the absence of any judicial determination establishing the existence of a prescriptive easement and the absence of any eminent domain proceedings, deliberately

authorizing, directing, approving, ratifying, and/or enforcing the maintenance, improvement, alteration, and public use of Cedar Creek Road without providing Plaintiff notice, a hearing, or the opportunity to contest the Union County Defendants' claimed rights, which constituted an intentional, reckless, and callous indifference to Plaintiff's federally protected rights.

112.   NMSA 1978, §§ 67-7-1 and 67-7-2 are inapplicable to Plaintiff's use of gates or horse bars.

113.   Chapter 67 of New Mexico Statutes applies only to "public highways," defined by § 67-2-1 as "[a]ll roads and highways, except private roads, established in pursuance of any law of New Mexico, and roads dedicated to public use … and such other roads as are recognized and maintained by the corporate authorities of any county in New Mexico …."

114.   The minimally improved section of Cedar Creek Road and the pink portion of Cedar Creek Road  were not established as a public road pursuant to any New Mexico law, were never dedicated to public use, and the Union County Defendants were not authorized to declare them a public road pursuant to Resolution 2024-21.

115.   Even if Union County Defendants were so authorized, they failed to follow the procedures set forth in Resolution 2024-21 to declare the minimally improved section of Cedar Creek Road or the pink portion of Cedar Creek Road a public road.

116.   Where a county is not authorized to categorize a road as a county road and landowners object to the county's improvements or maintenance of the road, and where other uses of the road were had only with the landowners' permission, the road is not considered a public road for purposes of Chapter 67. *Norero v. Board of County Comm'rs of Grant County,* 1971-NMSC-019, 82 N.M. 300, 481 P.2d 88 (decided under former statute).

**COUNT II-FIFTH AMENDMENT VIOLATION**

117. Plaintiff hereby realleges and incorporates by reference each allegation of the preceding paragraphs as though fully set forth herein.

118. This claim is brought pursuant to 42 U.S.C. § 1983 against the Union County Defendants.

119. Union County Defendants have physically appropriated the minimally improved section of Cedar Creek Road and the pink portion of Cedar Creek Road for public use by designating them as a public road, maintaining, upgrading, or altering them, and/or requiring them to remain open to the public, which constitutes a *per se* physical taking requiring just compensation.

120. Alternatively, if a prescriptive easement exists, Union County Defendants exceeded its lawful scope by expanding use of the minimally improved section of Cedar Creek Road beyond its historical use or access, increasing traffic, performing upgrades, and mandating that the gates and horse bars remain open, encouraging uses beyond ingress and egress, thereby effecting a physical taking of additional property interests beyond the scope of any existing prescriptive easement.

121. Union County Defendants' actions have harmed Plaintiff's ability to conduct cattle operations by eliminating controlled access through the pastures and exposing livestock to unrestricted public entry and harm and has significantly diminished the value of Plaintiff's property and its earning potential.

122. Union County Defendants have not instituted condemnation proceedings and have not paid just compensation for the taking of Plaintiff's property or for the expanded public use imposed on it.

123.    The taking was the direct result of the Union County Defendants' passage of Resolution 2024-21.

124.    By taking Plaintiff's private property for public use without just compensation, Union County Defendants violated the Fifth Amendment of the United States Constitution, as incorporated against municipalities by the Fourteenth Amendment.

125.    Defendant Union County Board, through its final policymakers and decisionmakers, Defendants Kiesling, Miller, and Vincent, had actual knowledge of the violation of Plaintiff's Fifth Amendment rights and knowingly participated in, ratified, directed, or implemented those constitutional violations.

126.    Defendants Kiesling, Miller, and Vincent directly participated in authorizing, directing, approving, and/or ratifying the physical occupation and expanded public use of the minimally improved section of Cedar Creek Road  and the pink portion of Cedar Creek Road.

127.    Their actions were not legislative in nature and involved the application and enforcement of Union County Board policy to Plaintiff's specific property, not the formulation of legislation.

128.    Defendants Kiesling, Miller, and Vincent knew that eliminating the use  of pasture gates and horse bars on Cedar Creek Road and treating the minimally improved section of Cedar Creek Road and the pink portion of Cedar Creek Road as public and physically appropriating the road for public use or expanding its public use would substantially interfere with Plaintiff's property rights, including his livestock operations, resulting in a significant loss of the economically beneficial use of  Cedar Creek Ranch and the significant diminution in value of Cedar Creek Ranch..

129.    Defendants Kiesling, Miller, and Vincent knew about and deliberately disregarded the absence of any condemnation proceedings to take Plaintiff's property; nonetheless, they authorized and ratified the taking of Plaintiff' property or property interests without initiating condemnation proceedings and without ensuring the payment of just compensation to Plaintiff.

130.    At the time of Defendants Kiesling's, Miller's, and Vincent's conduct, it was clearly established that the government may not physically appropriate private property for public use or materially expand the scope of an easement without paying just compensation.

131.    No reasonable official in the position of Defendants Kiesling, Miller, and Vincent could have believed that authorizing, ratifying, or enforcing the physical occupation and/or expanded public use of a private road absent a prescriptive determination or compensation was constitutionally permissible.

132.    By knowingly authorizing, ratifying, and/or enforcing a physical taking of Plaintiff's private property for public use without just compensation, Defendants Kiesling, Miller, and Vincent violated Plaintiff's rights under the Fifth Amendment, as incorporated by the Fourteenth Amendment, and are liable in their individual capacities under 42 U.S.C. § 1983.

133.    Plaintiff is entitled to compensatory, consequential, and punitive damages, as well as their attorney's fees and costs pursuant to 42 U.S.C. § 1988, as set forth above

### COUNT III—FIRST AMENDMENT RETALIATION

134.    Plaintiff hereby realleges and incorporates by reference each allegation of the preceding paragraphs as though fully set forth herein.

135.    This claim is brought against all Defendants pursuant to 42 U.S.C. § 1983.

136.    Plaintiff engaged in activity protected by the First Amendment, including speech addressing matters of public concern.

137. Defendants took adverse action against Plaintiff that would chill or deter a person of ordinary firmness from continuing to engage in protected First Amendment activity.

138. Plaintiff's protected activity was a substantial or motivating factor in Defendants' decision to take the adverse action.

139. Each individual Defendant personally participated in, directed, authorized, or knowingly acquiesced in the retaliatory conduct.

140. Each individual Defendant intentionally and knowingly took, directed, participated in, or permitted adverse action against Plaintiff because of his protected activity.

141. The right to be free from retaliation for protected speech on matters of public concern was clearly established at the time of Defendants' conduct.

142. Union County Defendants' retaliatory conduct was undertaken pursuant to Resolution 2024-21, which was official County policy.

143. Defendants Union County Sheriff's Office and Defendant Skaggs's retaliatory conduct was undertaken pursuant to the decisions and conduct of Defendant Skaggs.

144. The policy, conduct and official decisions were the moving force behind the violation of Plaintiff's First Amendment rights.

145. Defendants Union County Board and the Union County Sheriff's Office, through their final policymakers and decisionmakers, had actual knowledge of Plaintiff's protected activity and knowingly participated in, ratified, directed, or implemented retaliatory harassment and enforcement actions against Plaintiff.

### COUNT IV—VIOLATION OF ARTICLE II, § 20 OF THE NEW MEXICO CONSTITUTION

146. Plaintiff hereby realleges and incorporates by reference each allegation of the preceding paragraphs as though fully set forth herein.

24

147. This claim is brought against the Union County Board.

148. Article II, § 20 of the New Mexico Constitution, enforceable pursuant to the New Mexico Civil Rights Act (NMCRA), provides: "Private property shall not be taken or damaged for public use without just compensation."

149. Article II, § 18 of the New Mexico Constitution, enforceable through the NMCRA, provides: "No person shall be deprived of … property without due process of law."

150. The Union County Board violated Plaintiff's state constitutional due process rights and violated the Takings Clause of the New Mexico Constitution, damaging Plaintiff, as alleged above.

151. Plaintiff is entitled to damages, as alleged above, as well as their attorney's fees and costs under the New Mexico Civil Rights Act.

152. NMSA 1978, § 41-4A-3(B) also authorizes injunctive relief for violations of the New Mexico Civil Rights Act.

153. Accordingly, Plaintiff requests the Court to enjoin the Union County Board from further maintaining, improving, or altering the road that traverses his  property, the Cedar Creek Ranch, and to enjoin the Union County Board from prohibiting Plaintiff from closing the gates and horse bars across Cedar Creek Road on Cedar Creek Ranch.

## COUNT V—VIOLATION OF ARTICLE II, § 17 OF THE NEW MEXICO CONSTITUTION

154. Plaintiff hereby realleges and incorporates by reference each allegation of the preceding paragraphs as though fully set forth herein.

155. This claim is brought against the Union County Board and Union County Sheriff's Office.

156.    Article II, § 17 of the New Mexico Constitution, enforceable pursuant to the NMCRA, provides: "Every person may freely speak … and no law shall be passed to restrain or abridge the liberty of speech .…"

157.    Defendant Union County Board passed Resolution 2024-21 to abridge and restrain Plaintiff's liberty of speech and the Board, along with Defendant Union County Sheriff's Office, enforced that law to abridge and restrain Plaintiff's liberty of speech, as alleged above.

158.    Plaintiff is entitled to damages, as alleged above, as well as their attorney's fees and costs under the New Mexico Civil Rights Act.

## COUNT VI—INJUNCTIVE RELIEF

159.    Plaintiff hereby realleges and incorporates by reference each allegation of the preceding paragraphs as though fully set forth herein.

160.    This claim is brought against Union County Defendants.

161.    Union County Defendants continue to maintain, improve, and alter the minimally improved section of Cedar Creek Road and to prohibit Plaintiff from closing their pasture gates and horse bars on Cedar Creek Road, expanding use of Cedar Creek Road as a public road, and requiring unrestricted public access.

162.    Union County Defendants' ongoing actions are contrary to the law.

163.    Union County Defendants' conduct continues to deprive Plaintiff of protected property interests, including the right to exclude the public, the right to control access by gate, and the right to use the Cedar Creek Ranch for livestock operations.

164.    Absent injunctive relief, Plaintiff will continue to suffer irreparable harm, including ongoing interference with livestock operations, loss of control over his property, exposure to

liability and safety risks, and loss of constitutional rights, for which monetary damages alone are inadequate.

165. Legal remedies, including damages, are insufficient to fully redress the ongoing and prospective harm caused by Union County Defendants' conduct, which threatens continuing and repeated state and federal constitutional violations.

166. The balance of equities favors Plaintiff because Union County Defendants have no legitimate interest in continuing to enforce an unlawful designation of Plaintiff's private road as public or to enforce the expanded use of Plaintiff's private road while Plaintiff faces substantial and ongoing harm.

167. The public interest is served by ensuring that government actors comply with constitutional requirements and refrain from taking or using private property without lawful authority, due process, and just compensation.

168. Prospective injunctive relief is necessary to prevent Union County Defendants from continuing to violate Plaintiff's constitutional rights.

169. Therefore, Plaintiff seeks an injunction prohibiting Defendants from maintaining, improving, altering, or expanding Cedar Creek Road on Cedar Creek Ranch absent a lawful determination of prescriptive rights or completion of eminent domain proceedings and prohibiting Union County Defendants from requiring that gates and horse bars remain open.

170. Because Defendants' ongoing conduct violates Plaintiff's constitutional rights and threatens continuing irreparable harm, Plaintiff is entitled to injunctive relief.

### COUNT V—INVERSE CONDEMNATION

171. Plaintiff hereby realleges and incorporates by reference each allegation of the preceding paragraphs as though fully set forth herein.

172.    Pursuant to NMSA 1978, § 42A-1-29, a person authorized to exercise the right of eminent domain who has taken or damaged any property for public use without making just compensation is liable to the property owner for damages.

173.    Defendant Union County Board is authorized to exercise the right of eminent domain.

174.    Plaintiff is owner of the pink section of Cedar Creek Road. This section has numerous long-standing pastures separated by historic fences and these pastures are used by closing gates and horse bars across Cedar Creek Road where it crosses the fence lines. Any prescriptive rights to the pink section of Cedar Creek Road have been subject to the continuing ability of the owner to close gates and horse bars to maintain separation of the pastures. The Union County Board's policy expands any prescriptive rights and deprives Plaintiff of use and value of his property.

175.    Plaintiff is the owner of most of the minimally improved section of Cedar Creek Road and has protectable property interests in the road, including the right to control access through gates, the right to exclude the public, and the right to use his property for economically productive purposes.

176.    The Union County Board has treated the minimally improved section of Cedar Creek Road as a public road, including by maintaining, improving, and altering the road and its physical attributes, which include controlled access by gates and horse bars.

177.    Through its officials, agents, employees, and/or contractors, the Union County Board has physically entered Plaintiff's property, performed road maintenance, alterations, and improvements, allowed or encouraged public use of the minimally improved section of Cedar

28

Creek Road, and interfered with Plaintiff's livestock operations by its conduct, constituting a physical occupation and appropriation of Plaintiff's property.

178. The Union County Board has not initiated eminent domain or condemnation proceedings regarding the minimally improved section of Cedar Creek Road or the pink section of Cedar Creek and has not paid Plaintiff just compensation for the use or occupation of his property.

179. The Union County Board has never obtained a determination establishing the existence or scope of any prescriptive easement over the minimally improved section of Cedar Creek Road or pink section of Cedar Creek.

180. Alternatively, if the Union County Board possesses a prescriptive easement, it exceeded the lawful scope of any such easement by materially expanding the nature and intensity of use, including increasing traffic, performing improvements, altering the physical attributes of the road, and requiring that gates remain open for public access.

181. The Union County Board's actions have interfered with Plaintiff's livestock operations by eliminating effective control over access to pastures, increasing the risk of escaped livestock and injury to livestock, and impairing the productive and economical use of Plaintiff's property.

182. As a direct and proximate result of the Union County Board's actions, Plaintiff's property has been taken or damaged for public use.

183. Plaintiff is entitled to just compensation for the taking or damaging of his property, including without limitation, compensation for the diminution in value of their property before and after the taking, and damages for temporary takings due to loss of use of the pastures and the cost of reconfiguring livestock operations since the policy went into effect.

184.    The Union County Board's actions constitute a continuing taking or damaging of Plaintiff's property and Plaintiff' claim accrues and continues for as long as the Board maintains and uses the minimally improved section of Cedar Creek Road and as long as the Board encourages expanded use and enforces limitations on the pink section of Cedar Creek Road.

**PRAYER FOR RELIEF**

Plaintiff hereby realleges and incorporates by reference each allegation of the preceding paragraphs as though fully set forth herein. Plaintiff requests relief as follows:

1.    Compensatory damages in an amount to be determined at trial;

2.    Consequential damages in an amount to be determined at trial;

3.    Punitive damages in an amount to be determined at trial;

4.    Pre- and post-judgment interest;

5.    Attorney's fees and costs as allowed by law;

6.    Injunctive relief; and

7.    Such other and appropriate relief as appropriate.

**TRIAL BY JURY**

Plaintiff requests a jury on all issues triable to a jury.

Respectfully Submitted,

DOMENICI LAW FIRM, PC

*/s/ Pete V. Domenici, Jr.*
Pete V. Domenici, Jr.
Post Office Box 4295
Albuquerque, NM 87196-4295
(505) 883-6250
pdomenici@domenicilaw.com
*Attorney for Plaintiff Kevin Kenney*

30